UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELISHA EMERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:13-cv-953-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Felisha Emerson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act.[1]  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

**FACTS AND PRIOR PROCEEDINGS**

On November 16, 2009, Plaintiff filed her current application for disability beginning May 4, 2009. AR 17.[2] Plaintiff's application was denied initially and on reconsideration. AR 83, 90. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Cusker held a hearing on January 10, 2012, and issued an order denying benefits on March 9, 2012. AR 17-28. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-3. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on January 10, 2012, in Fresno, California. AR 33-65. Plaintiff appeared and testified. AR 21. She was represented by attorney Gina Fazio. AR 38. Impartial Vocational Expert ("VE") Judith Najarian also testified. AR 17.

Plaintiff was born on March 27, 1962 and was forty-eight years old at the time of the hearing. AR 38. Plaintiff is a former member of the United States Air Force. AR 39. Plaintiff testified she has been unable to work since May 4, 2009 due to a back condition, post-traumatic stress disorder, and anxiety. AR 40.

When asked about her mental impairments, Plaintiff stated that she currently receives prescription medications through the Veteran Affairs Hospital ("VA"), but does not receive any mental health counselling through them. AR 40. Plaintiff stated that she saw her psychiatrist at the VA about four times a year for medication and that she spoke with a psychiatrist in Florida over the phone and internet about twice a month. AR 44.

When asked about her physical impairments, Plaintiff explained that she takes prescriptions medication for her lower back pain. No physician has recommended surgery and Plaintiff alleviates her pain with ice and heat. AR 46. Plaintiff also had cysts removed from the arches of her feet and she now uses a cane to prevent her from falling down. AR 46. Due to her impairments, Plaintiff stated that she could lift five pounds frequently, and sit or stand for five to eight minutes. AR 47.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked about her daily activities, Plaintiff testified that she could not perform household chores, and that she laid down about three hours a day. AR 50-51. Plaintiff spends about an hour a day moderating a transgender internet chat site. AR 52. She also testified that she collected unemployment, and went to job interviews until approximately six months before the ALJ's hearing. AR 53-54.

Thereafter, the ALJ elicited testimony of the vocational expert ("VE") Judith Najarian. AR 56-64. Ms. Najarian testified that Plaintiff's past jobs were best classified as a HVAC technician, ceramics caster, and maintenance helper. AR 56-57. The ALJ asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and work history. AR 49. The individual can lift and carry 20 pounds occasionally and 10 pounds frequently and can sit without restriction and can stand for four-to-five hours and walk for three-to-four hours in an eight-hour work day. Additionally, this individual can interact with coworkers, supervisors, and the general public, but is unable to carry out an extensive variety of technical and/or complex instructions. AR 59. The VE stated that the hypothetical individual could not perform Plaintiff's past relevant jobs, but would be able to perform the representative jobs of "routing clerk," "mail clerk," and "price marker." AR 59-60.

In a second hypothetical question, the ALJ asked the VE to consider the same individual except that this person is able to sit for one-to-two hours, stand and/or walk for 20 to 30 minutes. In an eight-hour work day, this individual is able to sit for six hours and stand and walk one-to-two hours, and may need to elevate her legs during normal breaks. AR 60. The VE testified that a person with such limitations could perform jobs at the sedentary level, including order clerk, surveillance monitor, and hand-bander.

**Medical Record**

The entire medical record was reviewed by the Court. AR 248-463. The medical evidence will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 17-28. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 4, 2009. AR 19.

Further, the ALJ identified degenerative disc disease of the lumbar spine, chronic pain, and a history of bilateral surgery for bilateral plantar fibromas, anxiety disorder, and depressive disorder as severe impairments. AR 19. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 20.

Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, but with the additional limitations that Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit without restriction, walk for 3-4 hours, and stand for 4-5 hours in an 8-hour workday; and can occasionally climb stairs, ramps, ladders or scaffolds and can perform postural activities on a frequent but not continuous basis. AR 21.

Mentally, the ALJ found Plaintiff could maintain attention and concentration to carry out simple job instructions and relate and interact with coworkers, supervisors and the general public, but was unable to carry out an extensive variety of technical and/or complex instructions. AR 21. The ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy, including the representative jobs of route clerk, mail clerk, and marker. AR 26-27. The ALJ therefore found that Plaintiff was not disabled under the Social Security Act. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commission's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commission must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and

if the Commission's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In her opening brief, Plaintiff contends that the ALJ erred in evaluating the (1) treating physician evidence; (2) her subjective symptom testimony; and (3) lay witness testimony.

**DISCUSSION[3]**

**1.   The ALJ Properly Discounted Plaintiff's Treating Physicians**

Plaintiff first challenges the ALJ's disability finding for failing to provide specific and legitimate reasons for rejecting the opinions of her treating physicians Dr. Ochoa, Dr. Rylander and Dr. Nile.

**A.   Treating Physician Opinion Evidence**

**Dr. Ochoa**

Plaintiff sought treatment at the Belmont Medical Center beginning in January 2009 and Dr. Ochoa treated Plaintiff there in July 2009.  AR 186, 254-260, 289-291.  In June 2010, Dr. Ochoa

---

[3]   The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

5

completed a form opinion statement and opined that Plaintiff could work for only four to six hours a day. AR 288.[4]

The ALJ assessed the findings of Dr. Ochoa as follows:

> The record includes an illegibly signed questionnaire from Belmont Medical Center, dated June 2010, indicating the claimant was restricted from performing even sedentary work back of [sic] a history of back pain. The form stated that the claimant could stand and/or walk for 20-30 minutes and sit for 20-30 minutes at a time for a total of two to three hours sitting and two to three hours of standing and/or walking. It also stated that the claimant must lie down for 10-15 minutes in an eight-hour work day. The only objective findings noted in this medical source statement was tenderness along the lumbar spine and decreased range of motion. Treatment notes from Belmont comprise boxes checked on forms, indicate little but tenderness and pain in the back. The Belmont opinion is given no weight. The opinion is not supported by objective tests, such as imaging and/or laboratory tests which might explain the clinical findings, and is consistent with other medial [sic] source opinions.

AR 25.

### Dr. Rylander

On October 20, 2010, Plaintiff established care with Jeannette R. Rylander, M.D., at the Veteran Affairs Hospital ("VA"). AR 411. Dr. Rylander examined Plaintiff and assessed disability from chronic pain in her feet and back, PTSD, and bowel issues. AR 414. On November 4, 2010, Plaintiff reported inflammation of the ligaments under the sole of her right foot, as well as a heel bone spur. AR 406-08.

In December 2010, Dr. Rylander, M.D., provided a one-page medical opinion. AR 294. Dr. Rylander opined that Plaintiff was unable to perform even sedentary work, and that she could sit two to three hours, and stand and/or walk only 45 minutes in an eight-hour workday. AR 294. Dr. Rylander further opined that PTSD and anxiety interfered with Plaintiff's capacity for gainful employment. AR 294. Dr. Rylander also provided a check-box medical opinion in June 2011. AR 296-310. In this opinion, Dr. Rylander reported that Plaintiff could sit six hours and stand and/or walk one to two hours. AR 296. She also stated that leg elevation may be necessary for recovery from Plaintiff's foot surgeries. AR 296. Dr. Rylander noted that anatomically, Plaintiff has a long torso in

---

[4] The ALJ noted that the signature on the Belmont Medical Center form is illegible; however Plaintiff indicates that the opinion is from treating physician Dr. Ochoa. For clarity, the Court will refer to the statement from the Belmont Medical Center as the opinion of Dr. Ochoa.

comparison with her leg and arm length, which applies greater torque and stress on her lower back. AR 296.

The ALJ weighed Dr. Rylander's opinion as follows:

> The record includes two questionnaires by internist Janette [sic] Rylander, M.D., dated December 2010 and June 2011. In December 2010 questionnaire, Dr. Rylander opined that the claimant would be precluded from even sedentary work; she could sit two to three hours, and stand and/or walk only 45 minutes in an eight-hour workday. Dr. Rylander further opined that the post-traumatic stress disorder and anxiety interfered with the claimant's capacity for gainful employment. The latter statements exceeds the scope of Dr. Rylander's expertise (because it voices an opinion regarding a vocational issue), and further, it impinges on an issue reserved to the Commissioner. As such, it is not entitled to any special weight, and I have accorded it none, because it is unsupported by medical findings which could reasonably be expect [sic] to cause the limitation assessed (see e.g. next paragraph), and is inconsistent with other medical source opinions.
>
> In her June 2011 medical source statement, Dr. Rylander reported that the claimant could sit six hours and stand and/or walk one to two hours. She also stated that leg elevation may be necessary for recovery from her foot surgeries. Dr. Rylander noted that anatomically, the claimant has a long torso in comparison with her leg and arm length, which applies greater torque and stress over her lower back. I give this opinion no weight, for the reasons I reject the earlier opinions. VA records contain little evidence of treatment for physical problems, other than podiatric treatment. The claimant's lumbar spine MRI showed only mild degenerative changes. This opinion is not consistent with Dr. Stoltz's findings and opinions.

AR 25.

**Dr. Nile**

On September 22, 2010, Plaintiff underwent a psychiatric evaluation at the VA. AR 421 29. Plaintiff stated that, while in the Air Force, she had participated in covert operations to prevent terrorism from entering the United States. AR 421. As a result of these experiences, she had PTSD, symptoms of which had been triggered by the harassment she had experienced at her workplace in Texas in 2009. AR 422. Plaintiff reported nightmares three to four times a week, irritability and anger, exaggerated startle, and hypervigilence. AR 421. Plaintiff's psychiatrist, Lynn M. Nile, M.D., indicated that Plaintiff's mood was impaired; and she was anhedonic, had low energy, and her self-esteem was fair, but there was no evidence of psychosis. AR 421. Dr. Nile recommended that Plaintiff stay on her current medications (Prozac and Elavil), participate in supportive therapy, and return in two months. AR 421.

On November 16, 2010, Plaintiff saw Dr. Nile, complaining of being nervous and jittery when she came to town and that, generally, she was anxious, confused, and hypervigilant. AR 405. Dr. Nile

diagnosed PTSD and Major Depressive Disorder, recurrent, chronic, in partial remission, and told Plaintiff to continue with her medications and therapy. AR 406.

The ALJ weighed Dr. Nile's opinion as follows:

> Lynn M. Nile, M.D., another VA treating source, submitted a psychiatric medical source statement indicating the claimant has marked restriction in her activities of daily living, extreme restriction in social functioning and concentration, persistence, and pace, and reports she has experienced three extended episodes of decompensation. Dr. Nile also reported that the claimant was chronically disabled and unemployable, and her onset date was in the 1990's. This opinion is given no weight. The objective medical evidence does not support this degree of limitation. Further, Dr. Nile does not appear to have any direct knowledge of the claimant's condition in the 1990's and his opinion appears to be speculative. Further, the claimant was employed, and earned wages exceeding substantial gainful activity levels through 2009, thereby contradicting Dr. Nile's opinion that she had been unemployable since the 1990's. This discredits Dr. Nile's opinion.

AR 26.

**B.    Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

### C. The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues the ALJ did not attach appropriate weight to the opinions of her treating physicians. The Court disagrees. The ALJ reviewed the entire medical record, and reasonably gave the greatest weight to the opinions of Dr. Stoltz, the internal medicine consultative examiner, and Dr. Michiel, the psychiatric consultative examiner. AR 24-25. These independent physicians' opinions were consistent with the medical record, which showed conservative treatment with mild or moderate objective findings. AR 21-26. Further, in rejecting the opinions of some of Plaintiff's treating physicians, the ALJ provided specific and legitimate reasons for doing so.

#### Dr. Stoltz

Plaintiff was examined by internist Steven Stoltz, M.D., in March 2010. Plaintiff reported gastrointestinal problems and chronic pain. AR 261-266. Plaintiff also reported that the pain initially started in her lower back, but also led to swelling in both hands, and episodic pain in the right anterior

groin. Dr. Stoltz also noted treatment by a podiatrist for ganglion cysts on the plantar surface of both feet. AR 263-265.

Upon examination, Plaintiff had generally normal range of motion, except for limited forward back flexion. AR 263-265. There were no other abnormal findings other than a slight limp and tender fibrous tissue on Plaintiff's feet. AR 263-265. Dr. Stoltz opined that Plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently, sit without restriction, stand 60-90 minutes at one time without interruption and walk for 45-60 minutes at one time without interruption. AR 266. Plaintiff could stand for four to five hours and walk for three to four hours, did not require a cane to ambulate, had no restrictions involving use of her hands, and could occasionally operate foot controls with either foot. AR 466. Finally, Dr. Stoltz opined that Plaintiff could climb stairs, ramps, ladders and scaffolds on an occasional basis, and perform other postural activities on a frequent but not continuous basis. AR 466.

The ALJ gave Dr. Stoltz's opinion great weight because it is supported by Dr. Stoltz's clinical findings, and consistent with other record evidence. AR 24.

### Dr. Michiel

In March 2010, Ekram Michiel, M.D., performed a psychiatric consultative examination. AR 267-270. Plaintiff's mental status examination revealed that she had depressed mood, but that her thought process was goal-directed, and thought content was not delusional. AR 268-269. Dr. Michiel opined that Plaintiff was capable of capable of performing simple job instructions and she could relate and interact with coworkers and the general public. AR 269.

**D.     The ALJ Provided Specific and Legitimate Reasons for Discounting Plaintiff's Treating Physicians**

The ALJ provided specific and legitimate reasons for rejecting the opinions of Plaintiff's treating physicians in favor of Plaintiff's examining physicians. First, the ALJ reasonably gave no weight to the form opinion filled out by Dr. Ochoa at the Belmont Medical Center. AR 288. Dr. Ochoa's opinion stated that Plaintiff was restricted from performing even sedentary work, due to a history of back pain. AR 25, 288. However, Dr. Ochoa's form opinion cited only tenderness of the

spine and decreased range of motion to support the extreme limitations he opined. AR 25, 288. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). While a treating physician opinion can be entitled to greater weight, an ALJ may reject or discount a treating physician's opinion if the opinion was not based on objective medical evidence, inconsistent with the physician's own medical records, or dramatically more restrictive than the opinion of any other medical source. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Dr. Ochoa's finding that Plaintiff could not perform even sedentary work was dramatically restrictive in light of the mild objective findings identified by Dr. Ochoa. For this reason, the ALJ was entitled to discount Dr. Ochoa's opinion as over restrictive.

Second, the ALJ discounted Dr. Rylander's opinion because it was inconsistent with the VA treatment records, which showed conservative care and mild-to-moderate objective findings. AR 25. Progress reports from the VA show treatment for Plaintiff's podiatric issues and for anxiety. AR 312-459. The latest MRI report in the record from the VA indicated mild to moderate findings. AR 312-314. Overall, Plaintiff's progress reports reflected normal treatment, and the ALJ correctly noted that the evidence did not show the sort of intense treatment regimen that one would expect to find, given the significant functional limitation opined by Dr. Rylander. AR 25-26. The ALJ also noted that Dr. Rylander stated that Plaintiff "has a long torso in comparison with her leg and arm length, which applies greater torque and stress on her lower back." AR 304. It was legitimate for the ALJ to reject this limitation, as a long torso is not the type of objective medical evidence that supports a disability finding. AR 25. Further, despite her long torso or related anatomical issue, prior to her application Plaintiff previously worked, passed a military physical, and participated in military service for a number of years.

Overall, with respect to Plaintiff's physical impairments, the ALJ reasonably gave greater weight to Dr. Stoltz's opinion, who assessed functional limitations that were more in line with the mild findings in the record. AR 26, 263-265. The ALJ explained that Dr. Stoltz's examination showed

only very mild limitation to Plaintiff's range of motion six months before the MRI. AR 263-265. Furthermore, a later MRI indicated only mild degenerative changes. AR 312-314. Plaintiff generally had a normal range of motion, except for limited forward back flexion. AR 23, 263-265. Further, there were no other abnormal findings other than a slight limp and tender fibrous tissue on the plantar surfaces of Plaintiff's feet. AR 24, 263-265. The ALJ reasonably considered the fact that Dr. Stoltz's opinion, and his relatively benign objective findings upon examination, were clearly at odds with the extreme limitation opined by Drs. Ochoa and Rylander. AR 23-24. Accordingly, the record supports the ALJ's decision to reject the opinions of Drs. Ochoa and Rylander in favor of the consultative examining opinion of Dr. Stoltz.

With respect to Plaintiff's mental impairments, the ALJ rejected the opinion of Dr. Nile, Plaintiff's treating psychiatrist, for several reasons. First, Dr. Nile opined that Plaintiff had moderate restrictions in activities of daily living; extreme difficulties in maintaining social functioning; and extreme difficulties in maintaining concentration, persistence or pace. AR 306. She also opined that Plaintiff had three extended episodes of decompensation and Plaintiff's mental limitations began in the 1990's. AR 308. Overall, Dr. Nile opined that Plaintiff was chronically disabled and unemployable. AR 26.

Dr. Nile's opinion was in stark contrast to the opinion of Dr. Michiel, who opined only mild mental functional limitations. The ALJ correctly observed that Dr. Nile's opinion was an outlier and the medical evidence did not support this degree of limitation. AR 26. The ALJ thus gave "no weight" to this opinion and instead favored the opinion of Dr. Michiel.

The factors that the ALJ could consider in rejecting Dr. Nile's testimony included: (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion. 28 C.F.R. § 404.1527(d). Dr. Michiel's examination generally revealed mild findings. AR 268-269. Based upon these objective findings, Dr. Michiel opined that Plaintiff had no mental limitation to her ability to perform basic work activities. AR 269. Likewise, Plaintiff's own

12

testimony undermined the nature of her treatment with Dr. Nile. Plaintiff testified that she received very limited treatment from Dr. Nile, which consisted primarily of medical refills. AR 43. Further, Dr. Nile prescribed conservative treatment that was largely successful. After treatment, Plaintiff reported that she was "less anxious overall, more productive, [with an] increased sense of accomplishment." AR 331. The ALJ considered this evidence and concluded that Dr. Nile's progress reports do not reflect the "marked" and "extreme" level of functional limitation she opined. AR 308.

Dr. Nile's opinion is also unreliable in light of its objective inaccuracies. Dr. Nile's opinion indicated that Plaintiff symptoms began in the 1990's which the ALJ noted was undermined by evidence in the record that Plaintiff was actually working until 2009. AR 26, 305. Further, Dr. Nile began treating Plaintiff in September 2010. The ALJ observed that Dr. Nile has no direct knowledge of Plaintiff's condition in the 1990's, and therefore his opinion in that respect is speculative. This too was a valid consideration. *See Batson*, 359 F.3d at 1195 (citation omitted) ("an ALJ may discredit treating physicians' opinions that are . . . unsupported by the record as a whole").

Dr. Michiel had the opportunity to interview, observe and examine Plaintiff and he considered Plaintiff's demeanor, her activities of daily living, her intellectual functioning, and her past psychiatric history. Based on his assessment, Dr. Michiel observed only mild persistent symptoms or mild difficulty in functioning. Accordingly, there was substantial evidence supporting the ALJ's decision to rely on Dr. Michiel's opinion over that of Dr. Nile.

**2. The ALJ Did Not Err in Discrediting Plaintiff's Subjective Symptom Complaints**

Second, Plaintiff argues that the ALJ failed to provide clear and convincing evidence for finding Plaintiff's subjective testimony not credible. In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). Other factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity, and effect of

symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ proffered several reasons for rejecting Plaintiff's impairment testimony. With respect to Plaintiff's credibility, the ALJ found as follows:

> I find the claimant's allegations less than fully credible, for several reasons. First, medical findings regarding the claimant's back condition (see below) do not appear to show an impairment which could reasonably be expected to cause the claimant's alleged limitations and symptoms. Second, the medical record and examination do not support mental impairment to the extent alleged by the claimant. Third, the claimant admitted she received unemployment benefits while this claim was pending, as recently as six months prior to the hearing. She admitted that she had to certify she was ready and willing to work. When I asked if she was ready and able to work at that time, her answer was evasive. This evasive testimony detracts from the credibility of the claimant's complaints. Finally, I have doubts about the service history report to the VA. The claimant's years in service (1980-92) do no [sic] coincide with the period when the United States was engaged in hostilities in Southeast Asia, and there is no documentation supporting her allegations that she was tasked with operations against terrorists.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

AR 22.

As discussed at length above, the record largely contains evidence of conservative treatment and moderate to mild functional limitations, yet Plaintiff alleges that she was totally incapacitated by her conditions. Dr. Stoltz, internal medicine consultative examiner, opined that Plaintiff could work with some functional limitations, and Dr. Michiel, the psychological consultative examiner, opined no limitation in Plaintiff's ability to perform basic work activities. AR 266, 269. The ALJ reviewed the medical evidence and reasonably determined that it did not fully support Plaintiff's alleged symptoms and limitations. AR 22. This was a valid reason to reject Plaintiff's subjective symptom testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597,

604 (9th Cir. 1989) (finding that the claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment").

The ALJ also found Plaintiff less credible because she was looking for work during the period in which she alleged she was disabled. AR 22. While Plaintiff contends in her brief that there was no evidence that she held herself out as being available to work, the record shows otherwise. At the 2012 hearing, Plaintiff testified that she was looking for work and went on job interviews until around summer 2011. AR 53-54.

Finally, the ALJ found that Plaintiff's unsupported allegations that PTSD resulted from covert counter-terrorism operations in Southeast Asia in the 1980's undermined her credibility. AR 22. *See Tommasetti*, 533 F.3d at 1039. The ALJ logically reasoned that the U.S. was not involved in any military action in that area of the world while Plaintiff was in the military. AR 22. Indeed, it is unclear how Plaintiff, who worked in the Air Force as a "structural specialist" would be assigned to such operations. AR 167.[5] Plaintiff also spent two years in military police service at Holloman Air Force Base in New Mexico, but it is likewise unclear how she would be assigned to covert operations in Asia while stationed in New Mexico. AR 167. Plaintiff's allegations are implausible on their face and the ALJ was justified in discounting her credibility. While Plaintiff argues that VA physicians provided no indication to question her military history that too is incorrect. Plaintiff's psychiatrist made a specific notation that her PTSD was not service-related. AR 422. Also, the VA progress reports did not show that the VA awarded Plaintiff any service-connected disability and Plaintiff has not contended that she had received any such award. AR 312-459. This too was a valid consideration by the ALJ in assessing Plaintiff's credibility.

The ALJ's credibility findings with respect to Plaintiff's subjective symptom testimony were thoroughly explained and supported. Credibility determinations "are the province of the ALJ," and where the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain which is supported by substantial evidence in the record, this Court does not second-guess that

---

[5] Plaintiff stated that her job duties included, "build, repair, and maintain all structures on the Base." AR 183.

15

decision. *Fair*, 885 F.2d at 604. By considering Plaintiff's inconsistent statements and the objective medical evidence the ALJ set forth clear and convincing reasons for discounting the credibility of Plaintiff's subjective complaints. Thus, the ALJ satisfied his burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Although Plaintiff may disagree with the specific findings, the findings were supported by clear and convincing evidence in the record and the Court will not second-guess them. *Thomas*, 278 F.3d at 959. Therefore, Plaintiff's challenge on this ground fails.

### 3.     The ALJ Properly Discounted Plaintiff's Lay Witness Credibility

Finally, Plaintiff also alleges that the ALJ failed to give proper weight to the lay witness statement of Charles Hale, Plaintiff's significant other. AR 22-23. On December 10, 2009, Charles Hale submitted a third party function report regarding his knowledge about Plaintiff's daily activities and abilities. AR 196-203. Mr. Hale reported the following: Plaintiff experiences pain when she performs personal care, she performs light household chores and prepares simple meals a few times a day. Plaintiff frequently falls down and she cannot bend or lift much. AR at 196-203.

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512. Further, "inconsistency with medical evidence is another such reason." *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005).

Here, the ALJ cited Mr. Hale's report, noting that it was inconsistent with the medical evidence. The ALJ therefore declined to give any weight to Mr. Hale's statement, because it was not consistent with Plaintiff's treatment record. AR 22-23. This alone was germane reason to reject Mr. Hale's lay witness statement. *Bayliss*, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a

germane reason for discounting lay witness testimony). Second, the ALJ also observed that Mr. Hale's statement exaggerated Plaintiff's functional limitations. AR 23. For example, Mr. Hale stated that Plaintiff had difficulty talking, whereas Plaintiff herself alleged no such limitation. AR 23, 201. This too was a germane reason. *Cf. Tommasetti*, 533 F.3d at 1039 (ALJ may use ordinary techniques of credibility).

Finally, unlike lay testimony, there is no controlling precedent requiring an ALJ to explicitly address written statements, such as the "Function Report - Adult - Third Party" form in this case. Indeed, it is clear that an ALJ is not required "to discuss every piece of evidence." *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see also Molina*, 674 F.3d at 1114 ("We have not, however, required the ALJ discuss every witness's testimony on a individualized, witness-by-witness basis."). In this case, the ALJ appropriately considered the written statement provided by Mr. Hale and provided specific and germane reasons to reject Mr. Hale's statements. The Court finds that the ALJ's rejection of Mr. Hale's third party function report is supported by substantial evidence and was not error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Felisha Emerson.

IT IS SO ORDERED.

Dated: **September 30, 2014**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE